*In re* TOWNSHEND *et al.*

*In re* UNITED STATES CREMATION CO.

(*Supreme Court, General Term, First Department.* May 13, 1892.)

1. CORPORATE ELECTIONS—VALIDITY—PROXIES.

At a corporate election, proxies which referred to the election as "a new election of directors by the stockholders" of the corporation, naming it, were sufficient, although they merely stated the year and month in which it was to be held, the day not having been determined when they were signed; and a refusal of a sufficient number of votes of the holders thereof to have changed the result of the election was ground, under Laws 1890, c. 563, § 15, for setting aside the election, and ordering a new one.

2. SAME—RES JUDICATA.

A denial of an application for such order because of the insufficiency of proof to show that the proxies were valid, is not a bar to a subsequent application, especially as one of the present applicants was not a party to the former proceeding.

Appeal from special term, New York county.

Application of George Townshend and others, stockholders in the United States Cremation Company, Limited, for an inquiry into the validity of an election of directors and an order for a new election, under Laws 1890, c. 563, § 15, which provides that the supreme court shall, "upon the application of any person or corporation aggrieved by or complaining of any election of any corporation, * * * inquire into the matters or causes of complaint, and establish the election, or order a new election," etc. There was an order setting aside said election, and ordering a new one, from which Louis Lange and others appeal. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.
*C. T. Haviland,* for appellants.    *C. A. Hart,* for respondent.

PER CURIAM.    We think that the learned court at special term was entirely
correct in holding that the proxies which were rejected by the inspectors of
election were sufficient in form to entitle their holders to vote.    The only
blank which appeared in the proxies was as to the day of the month.    The
month itself and the year were specified; also the hours between which the
election was to take place.    The election itself was also referred to as "a new
election of directors by the stockholders of the United States Cremation Com-
pany, Limited," a phrase which was in precise accordance with the call for
the election.    The intention of the stockholders who signed such proxies was
therefore unmistakable.    They referred to the particular election in question,
and they clearly intended to confer upon the persons specified in such proxies
the right to vote for them at such particular election.    They could not, at the
time they signed the proxies, have specified the day of the month, for the
reason that the day of the month had not then been fixed by the board of
directors.    But the fact that such an election was to take place in the month
of June was understood, and the proxies were drawn with direct reference
to such forthcoming election.    We think that the persons to whom such prox-
ies were delivered were even authorized under the circumstances to fill in the
blank with regard to the day of the month, and that they might have done so
at the moment when they tendered these proxies to the inspectors, and
claimed the right to vote thereon.    As it appears that the refusal to accept
these proxies, and to permit the holders thereof to vote thereon, changed the
result of the election, we think that the special term was right in directing a
new election to be held.

The only other important question presented by the appellant is whether
the court is powerless to grant this relief, because of the denial of a previous
application for similar relief.    The appellant claims that by reason of such
denial the question with regard to these proxies was adjudicated adversely to
the view taken by the special term on the present application.    It appears,
however, that the previous application was made by but two stockholders,
named Dreher and Zimmerman, who simply alleged in their petition that
proxies for 200 shares of the stock of the company were rejected by the in-
spectors at such election "because the date of meeting was omitted there-
from."    This petition was supported by the affidavit of one Berendsohn,
who stated that "proxies for 200 shares were not counted, for the reason that
said proxies did not contain the date of said meeting."    These were the only
facts with regard to the proxies in question before the court on such previous
application; no proof upon the part of the defendants upon that point.    Upon
such facts the court held, and properly, that such proxies were invalid, for
the reason that they did not appear to have reference to any particular elec-
tion.    For aught that appeared in such papers, neither the day of the month,
nor the year, nor the character of the election was specified.    The ruling of
the court was therefore in the nature of a dismissal of the complaint in an
ordinary action for lack of proof.    The ruling, in substance, was that on the
facts presented by applicant the election could not be set aside.    On the pres-
ent application, however, the form of the proxies was before the court, and
the intent of the stockholders who signed such proxies was made manifest by
proper and competent proof.    It also appeared on the present application be-
yond question that the rejection of the vote under these proxies changed the
result.

But it is quite clear, apart from all other questions, that the order made
on the previous application was not *res adjudicata* as to one at least of the
present applicants,—Albert Blumenthal,—for the reason that he was not
served with the papers, nor did he appear.    He is one of the stockholders of

the company, and, as such, he has a right to avail himself of the provision of the statute which confers upon the court jurisdiction to order a new election, and he cannot be deprived of that right by reason of any adjudication made in a proceeding to which he was not a party. It will not be necessary, therefore, to consider the question as to how far the granting or denial of a summary application in a special proceeding like the present is *res adjudicata* within the rules which govern in actions; and we rest our decision upon the precise facts of this application, namely, that the parties were not all the same in both applications, and that the denial of the motion on the first application amounted to nothing more than the dismissal of the complaint in an ordinary civil action for lack of proof with regard to some fact, which, if properly proved, would have entitled the plaintiff to relief. It follows that, as the proxies should have been received, and as the question is not *res adjudicata*, the order should be affirmed, with costs. All concur.